2012 WY 115

**Ricky D. MILLER, Appellant
(Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING DEPARTMENT OF TRANSPORTATION, Appellee (Respondent).**

**No. S-12-0033.**

Supreme Court of Wyoming.

Aug. 31, 2012.

Representing Appellant: Cole N. Sherard, Wheatland, WY.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Douglas J. Moench, Senior Assistant Attorney General; and Travis J. Kirchhefer, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1] Ricky D. Miller challenges a hearing examiner's order upholding his per se driver's license suspension. Miller claims that his breath test was invalid because the test operator was not properly certified. We affirm.

## ISSUE

[¶ 2] Miller presents one issue:

1. Was the Office of Administrative Hearing's conclusions of law in error when it upheld the Wyoming Department of Transportation's "per se" suspension of [Miller's] driver's license when the chemical breath test was performed by an operator who was no longer certified to perform a breath test analysis in accordance with W.S. § 31–6–105(a) and Wyoming Department of Health Rules and Regulations?

## FACTS

[¶ 3] On October 15, 2010 a Guernsey police officer arrested Ricky D. Miller for driving under the influence (DUI). At the Platte County Detention Center Miller submitted to a breath test on an Intoximeter EC/IR machine. Corporal Mandy Karr of the Platte County Sheriff's Department performed the test, which showed that Miller's blood alcohol content was .25%, well over the legal limit of .08%. On the operation checklist for the test, Corporal Karr indicated that she was currently certified by the State of Wyoming as an operator. On November 15, 2010 the Wyoming Department of Transportation (WYDOT) advised Miller that his driver's license would be suspended for 90 days, whereafter he requested a contested case hearing.

[¶ 4] The Office of Administrative Hearings (OAH) held a contested case hearing on February 3, 2011. At the hearing and in post-hearing briefing, Miller challenged the validity of his breath test, arguing that Corporal Karr did not have a valid operator's permit because she did not perform the tests required to maintain her certification. The OAH rejected Miller's argument, stating:

The evidence in this case is not in dispute. Corporal Karr obtained her certification as an EC/IR operator on December 17, 2009; she performed one test in January 2010 and did not perform a test in February, March or April 2010. Under the DOH Rules, Corporal Karr should have been decertified. However, DOH did not receive a request to decertify Corporal Karr and pursuant to DOH's Rules Ch. 4, § 3, the permit shall be considered valid until the agency deems otherwise and provides notice of decertification. Since DOH did not determine Corporal Karr should be decertified and did not notify her that her permit was invalid, Corporal Karr's permit to perform chemical testing remained valid. The proposed suspension action should therefore be upheld.

The district court affirmed the OAH decision, and this appeal followed.

[¶ 5] Prior to this appeal, in April of 2011, Miller sent a letter to the Department of Health (DOH) requesting that Corporal Karr be retroactively decertified. *Miller v. Wyo. Dep't of Health*, 2012 WY 65, 275 P.3d 1257 (Wyo.2012). The DOH did not respond, and Miller subsequently filed a petition for review of agency inaction. The district court denied the petition stating that Miller lacked standing and the matter was not ripe for review. Miller appealed to this Court, and in an opinion published May 9, 2012, this Court affirmed the district court. We stated in our ruling:

It is apparent that WDOH's Rules and Regulations for Chemical Analysis for Alcohol Testing, ch. 4, §§ 2(ii)(A) and 3 are not entirely consistent regarding whether the Department has a mandatory requirement to revoke certification for failure to properly maintain certification. And further adding to the uncertainty is § 4 that states that once an officer is initially certified, his permit "shall be considered valid until the state agency deems otherwise, and so notifies the permittee[ ]." Nevertheless, the question the district court was faced with is: When it "accepts all facts stated in the complaint as being true and views them in the light most favorable to the [petitioner]," is it "certain from the

face of the [petition] that the [petitioner] cannot assert any facts which would entitle him to relief?" *Herrig* [*v. Herrig*], 844 P.2d [487] at 490 [ (1992) ] (citations omitted). In this case, in order to remedy Miller's and Gonzalez's injury, then, the district court would have had to order the Department to decertify the officers' permits *retroactive to the dates their respective certifications lapsed.*

While there is uncertainty in the WDOH's Rules and Regulations for Chemical Analysis for Alcohol Testing regarding when and under what circumstances the Department has an obligation to revoke an officer's permit to perform chemical tests for failure to properly maintain his certification, we agree with the Department that there is "no authority to decertify officers retroactively, which is the only remedy that would provide the relief sought by Miller and Gonzalez."

*Miller*, ¶¶ 38–39, 275 P.3d at 1265 (emphasis in original).

## STANDARD OF REVIEW

[¶ 6] In *Vasco v. State*, 2011 WY 100, ¶ 9, 253 P.3d 515, 517 (Wyo.2011) we said:

We accord no deference to a district court decision reviewing an administrative agency order. *Batten v. Wyo. Dep't of Transp. Drivers License Div.*, 2007 WY 173, ¶ 6, 170 P.3d 1236, 1239 (Wyo.2007). Instead, we review the case as if it came directly from the administrative agency. *Id.* As provided by Wyo. Stat. Ann. § 16–3–114(c)(ii)(E) (LexisNexis 2009), we apply the substantial evidence standard when reviewing an agency's evidentiary findings. When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's conclusions. *Schouboe v. Wyo. Dep't of Transp.*, 2010 WY 119, ¶ 5, 238 P.3d 1246, 1248 (Wyo. 2010), quoting *Dale v. S & S Builders, LLC*, 2008 WY 84, 188 P.3d 554 (Wyo. 2008).

## DISCUSSION

■ [¶ 7] In his only issue, Miller argues that his breath test was invalid because Corporal Karr's operator permit was not valid. Miller submits that the evidence established, and the OAH found, that Corporal Karr did not properly maintain her certification and should have been decertified. Miller agrees that the OAH does not have the authority to decertify an operator because that specific task is vested with the DOH. Nevertheless, Miller contends that the OAH has the authority to determine that a test was invalid because it was not conducted in compliance with the applicable statutes and rules.

[¶ 8] Relying on cases from other jurisdictions, Miller argues that the OAH's authority includes determining whether the operator was certified and when a test is not performed by a certified operator, the law requires that the test be presumed invalid.

[¶ 9] In order to reach our decision, we begin by looking at the applicable Wyoming statutes and rules that govern this appeal. First, Wyo. Stat. Ann. § 31–5–233 (LexisNexis 2011) states in pertinent part:

§ 31–5–233. **Driving or having control of vehicle while under influence of intoxicating liquor or controlled substances; penalties.**

. . . .

(k) Chemical analysis of a person's blood, breath or urine to determine alcohol concentration or controlled substance content shall be performed in accordance with W.S. 31–6–105(a).

Accordingly, we look to Wyo. Stat. Ann. § 31–6–105(a) (LexisNexis 2011), which states:

§ 31–6–105. **Method of performing chemical analysis; persons permitted to draw blood;** . . . .

(a) Chemical analysis of the person's blood, breath or urine to be considered valid under this section, shall be performed according to methods approved by the department of health and by an individual possessing a valid permit to conduct the analysis. Permits shall be issued by the department of health for this purpose. The department of health may promulgate and approve satisfactory methods in order to ascertain the qualifications of individuals permitted to conduct the analysis and shall issue to qualified individuals permits which are subject to termination or revocation by the department of health.

The DOH's rules are also applicable here. On the subject of testing blood alcohol content, the rules are as follows:

Chapter I. General Provisions.

Section 1. *Authority.* Pursuant to Wyoming Statute 31–6–105(a), for chemical analysis of the person's blood, breath or urine to be considered valid it shall be performed according to methods approved by the Department of Health and by an individual possessing a valid permit issued by the Department of Health. The Department of Health may promulgate and approve satisfactory methods in order to ascertain the qualifications of individuals to conduct the analysis and it shall issue permits to qualified analysts. The Department shall terminate or revoke permits for analysts who do not meet the promulgated qualifications.

*Department of Health Rules and Regulations for Chemical Analysis for Alcohol Testing,* Ch. I, General Provisions, Sec. 1 (2004).

[¶ 10] With regard to obtaining a permit to test, and maintaining the certification to do so, the DOH's rules further state in pertinent part:

Chapter IV. *Permit Requirements*

. . . .

Section 2. *Qualifications for Obtaining Permit.*

(a) Operator.

. . . .

(ii) Maintaining Certification.

(A) To maintain certification an operator shall perform a minimum of one (1) checklist every two months. These may be subject tests, reference alcohol solutions or complete checklist in the presence of the Senior Operator. Reports of original certification and continued certification/recertification for each operator

shall be kept on file and maintained by the Senior Operator. In case of noncompliance, the state agency shall revoke certification.

. . . .

Section 3. *Revocation of permits.*

Permits may be revoked for failure to perform the required number of analyses as described above, for failure to follow prescribed procedures, or for failing a required practical and/or written examination.

Section 4. *Validity of Permits.*

Permits shall be considered valid until the state agency deems otherwise, and so notifies the permittees.

Section 5. *State agency waivers.*

The State agency may, at its discretion, and on an individual basis, waive any of the requirements, providing; the individual can demonstrate to the state agency's satisfaction, an equivalent amount of knowledge and ability, and/or the state agency can demonstrate that the scientific validity of the result has not been affected.

*Department of Health Rules and Regulations for Chemical Analysis for Alcohol Testing,* Ch. IV, Permit Requirements, Sections 1–5 (2004).

[¶ 11] Finally, the OAH speaks to special rules relating to driver's licenses and states:

Chapter 6, Special Rules Relating to Driver's Licenses.

. . . .

(c) For those contested case hearings referenced in subsection (b) . . ., when the Wyoming Department of Transportation presents evidence establishing that the chemical testing was conducted using methods approved under Wyo. Stat. Ann. § 31–6–105, it shall be presumed that the test result is accurate. This presumption may be rebutted by evidence establishing that the specific test result is inaccurate as a result of equipment malfunction or improper administration.

*Office of Administrative Hearings, Special Rules Relating to Driver's Licenses,* Chapter 6, Section 2(c) (2002).

[¶ 12] Although *Bryant v. State ex rel. Wyoming Dept. of Transp.,* 2002 WY 140, ¶ 15, 55 P.3d 4, 9–10 (Wyo.2002) is not exactly on point to the facts of this case, it does speak to a relevant statute:

While we agree with Bryant that the plain language of this statute requires testing to be performed by an individual who possesses a valid permit to conduct the analysis, we do not see where it requires the arresting officer to provide evidence that he or she possesses a valid permit as a prerequisite to testing the individual. This is especially true when no tests are performed because testing is refused. Our analysis of Wyo. Stat. Ann. § 31–6–105(a) convinces us that the plain and ordinary meaning of the statute requires testing to be performed by a person who possesses a valid permit, who may or may not be the arresting officer, only when a chemical analysis of a person's blood, breath, or urine is actually performed. Because the testing was never performed, the question of whether Officer Bisceglia, or whomever would have conducted the test, possessed a valid permit is irrelevant.

[¶ 13] Considering the applicable statutes and our relevant case law under the facts of this case, we conclude that under the DOH's Rules and Regulations for Chemical Analysis for Alcohol Testing, Chapter IV, Section 4, the operator's permit in this case was valid because the state agency had not deemed otherwise and had not notified the permittee. ("Section 4. *Validity of Permits.* Permits shall be considered valid until the state agency deems otherwise, and so notifies the permittees.") Certainly, there is tension between the quoted rule and the DOH rule that states: "In case of noncompliance, the state agency *shall* revoke certification." *See id.,* at § 2(ii)(A) (emphasis added). However, we conclude that section 4 is controlling, as suggested by this Court in Miller's earlier appeal.

It is apparent that WDOH's Rules and Regulations for Chemical Analysis for Alcohol Testing, ch. 4, §§ 2(ii)(A) and 3 are not entirely consistent regarding whether the Department has a mandatory requirement to revoke certification for failure to

properly maintain certification. And further adding to the uncertainty is § 4 that states that once an officer is initially certified, his permit "shall be considered valid until the state agency deems otherwise, and so notifies the permittee[ ]."

*Miller*, ¶ 38, 275 P.3d at 1265.

### CONCLUSION

[¶ 14] The hearing examiner's decision is affirmed, and Miller's per se driver's license suspension stands. The test operator's permit was valid, as she had not been notified otherwise.