2012 WY 65

**Ricky D. MILLER and Christopher L. Gonzalez, Appellants (Petitioners),**

v.

**WYOMING DEPARTMENT OF HEALTH, Tom Forslund, Director, Tom Johnson, Chemical Testing Supervisor, James L. Moore, Laboratory Supervisor, Appellees (Respondents).**

No. S–11–0197.

Supreme Court of Wyoming.

May 9, 2012.

Representing Appellants: Cole N. Sherard, Wheatland, WY.

Representing Appellees: Gregory A. Phillips, Wyoming Attorney General, and Robin Sessions Cooley, Deputy Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1]   After being separately cited and arrested for driving while under the influence of alcohol (DWUI) in violation of Wyoming law, Ricky D. Miller and Christopher L. Gonzalez petitioned the district court for review of agency inaction by the Wyoming Department of Health (WDOH).   Miller and Gonzalez requested that the district court require the WDOH to retroactively decertify the chemical test operators (hereinafter "officers") who had performed chemical tests of Miller's and Gonzalez's breath to determine the quantity of alcohol in their respective bodies.   On motion by the WDOH, Tom Forslund, in his official capacity as director, Tom Johnson in his official capacity as chemical testing laboratory manager, and James L. Moore, in his official capacity as laboratory supervisor (collectively referred to as "Department"), the district court dismissed the "Petition for Judicial Review" on the grounds that Miller and Gonzalez lacked standing to bring the action and that the matter is not ripe for review.   Miller and Gonzalez now challenge the order dismissing their petition. We affirm.

## ISSUES

[¶ 2]   Miller and Gonzalez present two issues for our consideration:

1.  Is the Appellants' Petition for Judicial Review, challenging the WDOH failure to decertify the officers' certification to perform chemical analysis ripe for review by this Court?

2.  Do the Appellants have standing to petition the district court to order the

WDOH to decertify these officers for failing to comply with [its] own administrative rules and regulations for chemical testing?

## FACTS

[¶ 3]   Miller and Gonzalez were separately arrested for DWUI in violation of Wyoming law prohibiting driving while legally intoxicated, as determined by blood alcohol content (BAC). To determine their blood alcohol content, both submitted to chemical breath testing on an Intoximeter EC/IR II. Miller was tested by a Platte County deputy sheriff. Gonzalez was tested by a Guernsey police officer. Both officers were initially certified to perform chemical breath testing by the WDOH.

[¶ 4]   Breath test results showed that both Miller and Gonzalez were driving under the influence of alcohol in violation of Wyoming law. Both Miller and Gonzalez have the DWUI administrative and/or criminal processing pending, including revocation of their driver's licenses by the Wyoming Department of Transportation.

[¶ 5]   On April 5, 2011, Miller and Gonzalez sent a letter to the WDOH requesting that it retroactively decertify the officers' permits to perform chemical breath testing "for failing to maintain their certification requirements in accordance with W.S. § 31–6–105, et al and Wyoming Department of Health Rules and Regulations for Chemical Analysis for Alcohol Testing Chapter IV, Permit Requirements." The WDOH did not respond to the letter.

[¶ 6]   On April 22, 2011, Miller and Gonzalez filed a "Petition for Judicial Review" with the district court. The petition asserted that the Department "improperly certified or failed to decertify chemical test operators who have not properly received and maintained their certification requirements for chemical testing under WDOH Rules for Chemical Testing and W.S. § 31–6–105." Miller and Gonzalez argued that both of the Department's officers who performed the chemical breath tests on Miller and Gonzalez, respectively, were "either not properly certified and/or failed to properly maintain their certification and should have been decertified in accordance with W.S. § 31–6–105." Miller and Gonzalez requested that the district court require the Department to decertify the officers, retroactive to the dates their respective certifications lapsed.

[¶ 7]   On May 13, 2011, the Department filed a motion to dismiss the petition. The Department maintained that Miller and Gonzalez lacked standing to bring the action and, therefore, the petition must be dismissed under W.R.C.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Miller and Gonzalez responded to the motion on June 3, 2011, arguing that they "have a legally recognizable interest in the officers' certification to conduct chemical testing" as they "will be aggrieved and adversely affected if the breath tests are allowed to stand when the officers conducting the test were not properly certified." Specifically, Miller and Gonzalez "each ... [have] a driver's license ... that will be suspended if this court does not intervene."

[¶ 8]   On June 21, 2011, a hearing was held on the matter. On July 7, 2011, the district court entered its "Order Granting Respondents' Motion to Dismiss Petition for Review." The court granted the motion to dismiss "based on the doctrines of ripeness and standing." It found that Miller and Gonzalez "lack standing to bring this action as the Respondents are sufficiently removed from the Driving While Under the Influence (DWUI) process," and that the "matter is not ripe for consideration by [the district court] as the DWUI administrative and/or criminal processes are still pending."

[¶ 9]   Miller and Gonzalez timely appealed the district court's order dismissing their petition.

## STANDARD OF REVIEW

[¶ 10]   As the motion to dismiss filed in the district court was brought pursuant to W.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted, and Miller and Gonzalez are now appealing the district court's order dismissing their petition, we review the order as follows:

When reviewing a W.R.C.P. 12(b)(6) dismissal, this Court accepts all facts stated in the complaint as being true and views them in the light most favorable to the plaintiff. We will sustain a W.R.C.P. 12(b)(6) dismissal only when it is certain from the face of the [petition] that the [petitioner] cannot assert any facts which would entitle him to relief.

*Herrig v. Herrig,* 844 P.2d 487, 490 (Wyo. 1992) (citations omitted).

■ [¶ 11] "A motion to dismiss, even though sparingly granted, is the proper method for testing the legal sufficiency of the allegations and will be sustained when the complaint shows on its face that the plaintiff is not entitled to relief." *Mummery v. Polk,* 770 P.2d 241, 243 (Wyo.1989).

■ [¶ 12] Furthermore, as the WDOH is an "agency" as defined by the Wyoming Administrative Procedure Act, Wyo. Stat. Ann. § 16–3–101(b)(i) (LexisNexis 2011) ("Agency" means any ... department ... of the state, a county, city or town[.]), this Court reviews the final judgment of a district court regarding action taken by an administrative agency under Wyo. Stat. Ann. § 16–3–115 (LexisNexis 2011).

We structure our review as though the appeal were directly from the agency, giving no special deference to the findings of the district court, and we apply the same standard of review used by district courts under Wyo. Stat. Ann § 16–3–114 (Lexis-Nexis 2005).

*Escarcega v. State ex rel. Wyo. DOT,* 2007 WY 38, ¶ 6, 153 P.3d 264, 267 (Wyo.2007).

[¶ 13] Under Wyo. Stat. Ann. § 16–3–114(a) (LexisNexis 2011), "any person aggrieved or adversely affected in fact ... by other agency action or inaction ... is entitled to judicial review in the district court for the county in which the administrative action or inaction was taken[.]" According to W.R.A.P. 12.09(a), judicial review "shall be limited to a determination of the matters specified in Wyo. Stat. 16–3–114(c)." The matters specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2011) are:

(c) To the extent necessary to make a decision and when presented, the review-ing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 14] Under § 16–3–115, "an aggrieved party may obtain a review of any final judgment of the district court under this act by appeal to the supreme court." *See also* W.R.A.P 12.01 and 12.11.

## DISCUSSION

■ [¶ 15] While it is clear that the district court and this Court are granted authority to review agency action or inaction by the Wyoming Statutes and Wyoming Rules of Appellate Procedure as previously set forth, it is critical to understand that judicial review of an agency action or inaction is "only for those persons 'aggrieved or adversely affected in fact' by the challenged action." *Jolley v. State Loan & Inv. Bd.,* 2002 WY 7, ¶ 7, 38 P.3d 1073, 1076 (Wyo. 2002).

An aggrieved or adversely affected person is one who has a legally recognizable inter-

est in that which will be affected by the action. *Hoke v. Moyer,* 865 P.2d 624, 628 (Wyo.1993). A potential litigant must show injury or potential injury by "alleg[ing] a perceptible, rather than a speculative, harm resulting from the agency action." *Foster's, Inc. v. City of Laramie,* 718 P.2d 868, 872 (Wyo.1986). " 'The interest which will sustain a right to appeal must generally be substantial, immediate, and pecuniary. A future, contingent, or merely speculative interest is ordinarily not sufficient.' " *L. Slash X Cattle Company, Inc. v. Texaco, Inc.,* 623 P.2d 764, 769 (Wyo.1981) (quoting 4 Am.Jur.2d *Appeal and Error* § 180).

*Id.* ¶ 7, 38 P.3d at 1076–77 (quoting *Roe v. Board of County Commissioners, Campbell County,* 997 P.2d 1021, 1023 (Wyo.2000)).

[¶ 16] In light of the foregoing authority, and for purposes of our discussion, we will first discuss the issue of standing, presented as Miller's and Gonzalez's issue number two on appeal.

### Standing

■■■ [¶ 17] The issue of standing, specifically whether or not Miller and Gonzalez have standing to petition the district court to order the Department to decertify its officers for failing to comply with its own administrative rules and regulations for chemical testing, dovetails significantly with the requirements that must be met in order for the court to have authority to review the Department's action or inaction.

"Standing is a legal concept designed to determine whether a party is sufficiently affected to insure that the court is presented with a justiciable controversy." *Roe v. Board of County Commissioners, Campbell County,* 997 P.2d 1021, 1022 (Wyo. 2000) (quoting *Memorial Hospital of Laramie County v. Dep't of Revenue and Taxation of State of Wyoming,* 770 P.2d 223, 226 (Wyo.1989) and *Washakie County School District Number One v. Herschler,* 606 P.2d 310, 316 (Wyo.1980)).

"The doctrine of standing is a jurisprudential rule of jurisdictional magnitude. At its most elementary level, the standing doctrine holds that a decision-making body should refrain from considering issues in which the litigants have little or no interest in vigorously advocating. Accordingly, the doctrine of standing focuses upon whether a litigant is properly situated to assert an issue for judicial or quasi-judicial determination. A litigant is said to have standing when he has a "personal stake in the outcome of the controversy." This personal stake requirement has been described in Wyoming as a "tangible interest" at stake. The tangible interest requirement guarantees that a litigant is sufficiently interested in a case to present a justiciable controversy."

*State ex rel. Bayou Liquors, Inc. v. City of Casper,* 906 P.2d 1046, 1048 (Wyo. 1995) (quoting *Schulthess v. Carollo,* 832 P.2d 552, 556–57 (Wyo.1992) (citations omitted)).

*Roe,* 997 P.2d at 1022–23.

*Jolley,* ¶ 6, 38 P.3d at 1076.

[¶ 18] In the words of the United States Supreme Court:

Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), (internal citations and punctuation omitted).

■■■ [¶ 19] Turning to this case, Miller and Gonzalez claim that they have standing to pursue their petition for review. They assert that because they are subject to crimi-

nal penalties and are facing driver's license suspensions if the chemical tests stand, they are "aggrieved or adversely affected" by the Department's failure to properly certify or decertify the officers. They each maintain that they have a legally protected right in their driver's licenses. They also maintain that they have a right to be tested by an officer possessing a "valid" permit to perform chemical analysis for alcohol, as evidenced by § 31–6–105 and WDOH Rules and Regulations for Chemical Analysis for Alcohol Testing; ch. 1, §§ 1, 2, and 4, ch. 4, §§ 2 and 3, and ch. 5, § 2 (2004). They contend that the officers who tested Miller and Gonzalez, respectively, did not have "valid" permits because they failed to maintain their certifications. Notwithstanding, they contend that the Department has not followed its own rules and regulations and failed to decertify the offending officers. Therefore, according to Miller's and Gonzalez's argument, they "have been materially and substantially affected by the [WDOH's] failure to follow [its] rules and regulations," and as such, have standing to petition the court to order the Department to retroactively decertify the officers.

[¶ 20] In response, the Department contends that the district court properly ruled that Miller and Gonzalez lack standing to challenge the Department's certification decisions. The Department argues that Miller and Gonzalez do not satisfy the three elements of standing as set forth in *Lujan*. We agree with the Department and hold that the district court properly dismissed the petition for review.

### (I). Injury in Fact

[¶ 21] "The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact[.]" *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130.

[¶ 22] While in their appeal to this Court Miller and Gonzalez do not specifically address the three elements of standing as set forth in *Lujan,* they maintain that they "were injured and they were adversely affected at the moment they submitted to a chemical test." "The Appellants' licenses

will be suspended if their breath tests are allowed to stand and used against them to revoke their driver's licenses." Clearly, Miller and Gonzalez believe their "injury in fact" to be the potential suspension of their driver's licenses.

[¶ 23] However, at the time they filed their petition for review with the district court, Miller's and Gonzalez's driver's licenses had not been suspended. The law on standing and judicial review of an agency action plainly indicates that the injury must be "perceptible, rather than a speculative, harm." *Foster's, Inc. v. City of Laramie,* 718 P.2d 868, 872 (Wyo.1986). Thus, Miller and Gonzalez have not suffered an "injury in fact."

### (II). Causal Connection between the Injury and the Conduct Complained Of

[¶ 24] "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (internal citations and punctuation omitted).

When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury.... When, however, ... a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed.

*Id.* at 561, 112 S.Ct. 2130 (emphasis in original).

[¶ 25] In the present case, Miller and Gonzalez are not the "object[s] of the action (or forgone action) at issue." *Lujan* 504 U.S. at 561, 112 S.Ct. 2130. The "forgone action"

or "agency inaction" Miller and Gonzalez challenge is the Department's alleged failure to retroactively decertify the officers responsible for performing the respective chemical breath tests. § 16–3–114(a). Therefore, the "object[s]" of the "forgone action" or "agency inaction" are the officers, not Miller and Gonzalez. The "allegedly unlawful regulation (or lack of regulation)" in this case is of *someone else,* and therefore, "much more is needed." *Id.* Miller and Gonzalez simply cannot pass this test for causation. The alleged failure of the Department to take action to decertify the officers' permits to conduct chemical analysis did not cause Miller and Gonzalez to potentially lose their driver's licenses. As argued by the Department, "[i]t is Miller's and Gonzalez's illegal behavior that threatens their driver's licenses." We agree. Any effect on Miller and Gonzalez by the Department's alleged inaction is merely secondary and tenuous at best.

[¶ 26] In order to meet the causation element of the standing test, Miller and Gonzalez rely on Wyo. Stat. Ann. § 31–6–105(a) (LexisNexis 2011), which states, in part:

(a) Chemical analysis of the person's blood, breath or urine to be considered *valid* under this section, shall be performed according to methods approved by the department of health and by an individual possessing a valid permit to conduct the analysis. [Emphasis added.]

Miller and Gonzalez also rely on WDOH's Rules and Regulations for Chemical Analysis for Alcohol Testing, ch. 1, § 1 which states:

Pursuant to Wyoming Statute 31–6–105(a), *for chemical analysis of the person's blood, breath or urine to be considered valid it shall be performed* according to methods approved by the Department of Health and *by an individual possessing a valid permit* issued by the Department of Health. The Department of Health may promulgate and approve satisfactory methods in order to ascertain the qualifications of individuals to conduct the analysis and it shall issue permits to qualified analysts.

The Department shall terminate or revoke permits for analysts who do not meet the promulgated qualifications. [Emphasis added.]

[¶ 27] Furthermore, Miller and Gonzalez point to WDOH's Rules and Regulations for Chemical Analysis for Alcohol Testing, ch. 1, § 2 regarding the purpose for the rules. The section states that the purpose of the rules is "to insure scientific validity and uniform standards of practice for chemical analysis of alcohol."

[¶ 28] Miller and Gonzalez ostensibly contend that the failure of the Department to ensure that the officers maintain their certification destroys the scientific integrity of the chemical breath tests. It follows, then, that if the tests given to Miller and Gonzalez were scientifically inaccurate or invalid, they are directly injured by the Department's failure to enforce its own rules and regulations.

[¶ 29] However, there is no evidence in the record challenging the results of the tests nor is there any evidence that the tests given to Miller and Gonzalez were scientifically invalid. Moreover, as aptly stated by the Department:

If Miller and Gonzalez believe that there is cause to question the scientific validity of the breath tests, their remedy is within the administrative license revocation proceedings pursuant to Wyo. Stat. Ann. § 31–6–103, not in this action seeking retroactive decertification of the law enforcement officers' certifications.[1]

[¶ 30] Therefore, even if we were to accept that Miller and Gonzalez were "injured in fact," and, further, "accept[ ] all facts stated in the complaint as being true and view[ ] them in the light most favorable to the plaintiff," Miller and Gonzalez simply cannot show that any action or inaction by the Department "caused" the injury. *Herrig,* 844 P.2d at 490. This brings us to the final element of the standing test as set forth in *Lujan.*

---

**1.** Wyo. Stat. Ann. § 31–6–103(b) (LexisNexis 2011) states, in relevant part:

The scope of a hearing for the purposes of this act shall cover the issues of … if a test was administered, whether the test results indicated that the person had an alcohol concentration of eight one-hundredths of one percent (0.08%) or more[.]

**1264**

*(III). Redressibility*

[¶ 31]  Redressibility is the third element of the test for standing as set forth in *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130.  It "must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.*  In other words, in order for Miller and Gonzalez to have standing, they must be in a position such that if they were to prevail in proving the allegations in their petition, a judgment and order by the court would remedy their alleged injury.

[¶ 32]  It is perceivable that *if* Miller and Gonzalez were to be able to show that the chemical breath tests given to them, respectively, were *scientifically invalid* due to failure of the officers at issue to perform the tests correctly, and further show that the reason the tests were performed incorrectly is because of the Department's failure to ensure they were properly trained, that Miller's and Gonzalez's "injury" (i.e., loss of driving privileges) could be remedied.  However, as pointed out previously when discussing causation, the petition for review does not challenge the results of the tests nor does it set forth any evidence that the tests given to Miller and Gonzalez were scientifically invalid.  Moreover, as stated above by the Department:

> If Miller and Gonzalez believe that there is cause to question the scientific validity of the breath tests, their remedy is within the administrative license revocation proceedings pursuant to Wyo. Stat. Ann. § 31–6–103, not in this action seeking retroactive decertification of the law enforcement officers' certifications.

[¶ 33]  Perhaps most importantly, however, Miller's and Gonzalez's petition for review does not ask the district court to rule on the scientific validity of the breath tests.  The petition asks the court to *retroactively* decertify the officers' permits to perform chemical breath testing.  Miller and Gonzalez continually assert that they have been "aggrieved or adversely affected" as they are in jeopardy of having their driver's licenses suspended for DWUI based on the results of their chemical breath tests.  They assert that "[t]heir chemical tests were performed and conducted by uncertified opera-tors because of the WDOH's failure to enforce [its] own rules and regulations."  And, "[i]f the officers were not certified at the time of testing, the results of the test are inadmissible and cannot be used to suspend the Appellants driving privileges."  "The Appellants would assert a chemical test performed by an officer without a *valid certification* requires a rescission of their license suspension" based on § 31–6–105(a) (emphasis added).

[¶ 34]  Stated another way, in terms of redressibility, Miller's and Gonzalez's injury (i.e., loss of driving privileges) could be remedied by retroactive decertification if they can show the tests were *legally invalid* because officers performed them without a "valid permit" pursuant to § 31–6–105(a).  However, Miller and Gonzalez admit in their petition for review that the officers at issue on appeal were originally certified to conduct chemical analysis.  They also admit on appeal that Miller was tested by an officer who was "initially certified on December 7, 2009," and Gonzalez was tested by an officer who was "initially certified on January 12, 2009."  According to the record, there is no dispute over whether the officers in question were initially certified.

[¶ 35]  Consequently, Miller and Gonzalez must rely on their assertion that the officers "did not properly *maintain* their certification" because they failed to conduct necessary practice tests required to maintain certification as set forth in the WDOH's Rules and Regulations for Chemical Analysis for Alcohol Testing, ch. 4, § 2, and they should have been "decertified" pursuant to the Department's rules prior to the dates of Miller's and Gonzalez's respective arrests.

[¶ 36]  Miller and Gonzalez rely on WDOH's Rules and Regulations for Chemical Analysis for Alcohol Testing, ch. 4, § 2(ii)(A), which states in relevant part: "To maintain certification an operator shall perform a minimum of one (1) checklist every two months ... In case of noncompliance, the state agency *shall* revoke certification." (Emphasis added.)

[¶ 37]  Miller and Gonzalez also rely on WDOH's Rules and Regulations for Chemical

Analysis for Alcohol Testing, ch. 4, § 3 pertaining to revocation of permits, which states: "Permits *may* be revoked for failure to perform the required number of analyses as described above, for failure to follow prescribed procedures, or for failing a required practical and/or written examination." (Emphasis added.)

[¶ 38]  It is apparent that WDOH's Rules and Regulations for Chemical Analysis for Alcohol Testing, ch. 4, §§ 2(ii)(A) and 3 are not entirely consistent regarding whether the Department has a mandatory requirement to revoke certification for failure to properly maintain certification.  And further adding to the uncertainty is § 4 that states that once an officer is initially certified, his permit "shall be considered valid until the state agency deems otherwise, and so notifies the permittee[ ]."  Nevertheless, the question the district court was faced with is:  When it "accepts all facts stated in the complaint as being true and views them in the light most favorable to the [petitioner]," is it "certain from the face of the [petition] that the [petitioner] cannot assert any facts which would entitle him to relief?"  *Herrig*, 844 P.2d at 490 (citations omitted).  In this case, in order to remedy Miller's and Gonzalez's injury, then, the district court would have had to order the Department to decertify the officers' permits *retroactive to the dates their respective certifications lapsed.*

[¶ 39]  While there is uncertainty in the WDOH's Rules and Regulations for Chemical Analysis for Alcohol Testing regarding when and under what circumstances the Department has an obligation to revoke an officer's permit to perform chemical tests for failure to properly maintain his certification, we agree with the Department that there is "no authority to decertify officers retroactively, which is the only remedy that would provide the relief sought by Miller and Gonzalez." We agree with the Department that:

> If the district court were to find that the [Department] erred in failing to decertify the officers, it could order that they be

decertified prospectively, but there is no authority to retroactively order decertification.  Thus, the requested relief is not available nor can it redress the alleged injury.

[¶ 40]  For the reasons set forth above, we conclude that Miller and Gonzalez do not have standing to bring the action set forth in their petition for review.  The district court is affirmed.

### Ripeness

[¶ 41]  We now turn to the remaining issue raised by Miller and Gonzalez: "Is the Appellants' Petition for Judicial Review, challenging the WDOH failure to decertify the officers' certification to perform chemical analysis ripe for review by this Court?"

[¶ 42]  In its order dismissing Miller's and Gonzalez's petition for review, the district court also found that the issues before it were "not ripe for consideration ... as the DWUI administrative and/or criminal processes are still pending."  "Ripeness is a question of law, which [this Court] review[s] de novo."  *Cosco v. Lampert*, 2010 WY 52, ¶ 13, 229 P.3d 962, 969 (Wyo.2010) (internal quotation omitted).  However, because we find the issue on standing dispositive in this case, we need not address the question as to whether the issues raised by Miller and Gonzalez in their petition for review are ripe for review.

## CONCLUSION

[¶ 43]  Miller and Gonzalez lack standing to bring the action set forth in their "Petition for Judicial Review."  The district court is affirmed.